UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAURA MORITZ,

                       Plaintiff,

   -against-

TOWN OF WARWICK, TOWN OF GOSHEN,
MATTHEW IMPERIO, Individually and as an
Employee of the Town of Goshen, BRETT M.
LUKACH, Individually and as an Employee of the
Town of Warwick, MICHELE LEA BIASO, and
JOY GORISH,

                       Defendants.

No. 15-cv-5424 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Laura Moritz brings this action against Defendants Town of Warwick, Town of Goshen, Matthew Imperio, individually and as an employee of the Town of Goshen, Brett M. Lukach, individually and as an employee of the Town of Warwick, Michele Lea Biaso, and Joy Gorish alleging claims under § 1983 for denial of civil rights and conspiracy to deny civil rights, as well as state law claims of false arrest, malicious prosecution, malicious abuse of process, and failure to supervise or train.[1]  Before the Court is Defendant Joy Gorish's motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 83).  For the following reasons, Defendant Joy Gorish's motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are derived from the Amended Complaint (ECF No. 63), unless otherwise noted, and are taken as true for purposes of this motion.  Plaintiff and Defendant

---

[1] The failure to supervise or train claim is not asserted against Defendant Gorish.

Imperio "had a personal romantic relationship that concluded in January 2014." (Am. Compl. ¶ 13.) In January 2014, after the relationship concluded, Plaintiff contacted the New York State Police with information regarding criminal conduct of Defendant Imperio. (*Id*. ¶¶ 14–15.) Generally speaking, the allegations in the Amended Complaint center on two incidents following the conclusion of Plaintiff and Defendant Imperio's romantic relationship—the April 2014 Incident and the June 2014 Incident—during which Plaintiff alleges that Defendant Imperio conspired with other Defendants to falsify allegations against Plaintiff and cause her arrest and prosecution. For purposes of this motion, the Court focuses solely on the June 2014 Incident, which is the only incident involving Defendant Gorish.

"Prior to May 2014, Defendant Imperio had a personal relationship with Defendant Gorish."[2] (Am. Compl. ¶ 46.) On or before May 23, 2014, Defendants Gorish and Imperio reached an agreement regarding Plaintiff. (*Id*. ¶ 47.) The aim of their agreement was to use Defendant Imperio's position as a police officer, coupled with false allegations lodged against Plaintiff by Defendant Gorish, to cause the arrest and prosecution of Plaintiff without probable cause. (*Id*. ¶¶ 48–49.) In furtherance of their agreement, Defendant Gorish contacted the police department and made the following statements: (i) in February 2012 Plaintiff told Defendant Gorish "to stay away" from Defendant Imperio; (ii) "Plaintiff was keeping track" of Defendant Gorish; (iii) "Plaintiff was causing Gorish worry, unnecessary tension in her family relationships and material harm" to Defendant Gorish's health; (iv) Defendants Gorish and Imperio told Plaintiff they would contact the police; (v) Plaintiff made a series of calls to Defendant Gorish in 2012 and 2013; (vi) telephone records show Plaintiff called Defendant Gorish 19 times, 14 of which occurred after Defendants Gorish and Imperio told Plaintiff they were going to call the

---

[2] The Amended Complaint does not specify when the relationship between Defendants Imperio and Gorish started or whether the relationship is ongoing.

police; and (vii) Plaintiff's calls to Defendant Gorish had "no legitimate purpose." (*Id*. ¶ 50.) Defendants Gorish and Imperio knew that these statements were not true, and the telephone records show that statements by Defendants Gorish and Imperio were false. (*Id*. ¶¶ 51–52.)

Defendant Imperio had Defendant Gorish sign a false affidavit against Plaintiff to support a criminal charge of stalking, in violation of Penal Law Section 120.45-2. (*Id*. ¶ 53.) Defendant Lukach, knowing that the statements made by Defendants Gorish and Imperio were false, signed a criminal complaint and initiated Plaintiff's arrest and prosecution. (*Id*. ¶ 54.) Defendants Imperio, Gorish, and Town of Warwick procured a protective order "that substantially limited Plaintiff's actions and had the effect of embarrassing and humiliating Plaintiff." (*Id*. ¶ 70.) Plaintiff alleges that Defendants obtained the subpoena, summons, criminal complaint, and protective order "as retaliation for the conclusion of Plaintiff's relationship with Defendant Imperio and for Plaintiff having reported criminal conduct of Defendant Imperio to the New York State police and for the broader purpose of humiliating, embarrassing and intimidating Plaintiff." (*Id*. ¶ 73.)

Plaintiff was arrested on June 5, 2014. (*Id*. ¶ 57.) Plaintiff was taken into custody by Defendant Lukach and Defendant Town of Warwick for approximately 3 hours. (*Id*. ¶ 58.) Subsequently, Plaintiff was released and directed to return for arraignment. (*Id*. ¶ 59.) The June 5, 2014 criminal charge against Plaintiff was dismissed on the merits on January 26, 2015. (*Id*. ¶ 77.)

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6),[3] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[3] Because Defendant Gorish filed an Answer (ECF No. 67) prior to moving to dismiss, she should have moved pursuant to Rule 12(c), not Rule 12(b)(6). *See Hova v. Royal Caribbean Cruises Ltd.*, No. 12-cv-1358 (DRH)

3

*Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

## DISCUSSION

**I.     § 1983 Claims**

In general, private actors are not liable under § 1983.  *See Moreno v. Town of Greenburgh*, No. 13-cv-7101 (VB), 2014 WL 3887210, at *3 (S.D.N.Y. June 9, 2014).  However, a plaintiff may maintain a §1983 claim against a private actor when that private actor "acts under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

---

(ETB), 2013 WL 1820914, at *1 (E.D.N.Y. Apr. 30, 2013).  *See also Cal-Therm Indus. v. Dun & Bradstreet*, 75 F. Supp. 541, 542 (S.D.N.Y. 1948) ("Defendant moves, after answer, for a dismissal of the complaint for insufficiency in law.  The Court, however, considers this motion as one for judgment on the pleadings . . . .").  "Nevertheless, '[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).  Accordingly, "references to Rule 12(b)(6) are thus intended to apply to the instant motion." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08-cv-4207 (JFB) (WDW), 2010 WL 1270190, at *2 (E.D.N.Y. Jan. 27, 2010), *report and recommendation adopted in part*, 701 F. Supp. 2d 340 (E.D.N.Y. 2010) (citing *In re Ades & Berg Investors*, 550 F.3d 240, 243, n. 4 (2d Cir. 2008)).

"Admittedly, as has been noted, Supreme Court cases on the issue of what precisely constitutes state action 'have not been a model of consistency.'" *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 421 (S.D.N.Y. 2013) (quoting *United States v. Stein*, 541 F.3d 130, 147 (2d Cir. 2008) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (O'Connor, J., dissenting))). Nevertheless, case law is clear that "[p]rivate parties act under the color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005).[4]

"The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the police." *Winski*, 973 F. Supp. 2d at 422 (internal citations and quotations omitted). "To establish joint action, a plaintiff must show that the private citizen and the state official share a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996). "'In order to survive a motion to dismiss on [her] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concern to inflict an unconstitutional injury; and (3) and overt act done in furtherance of that goal causing damages.'" *Concepcion v. City of New York*, No. 05-cv-8501 (RJS), 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008) (quoting *Ciambriello*, 292 F.3d at 324–25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999))).[5] "A merely conclusory allegation that a private entity acted in concert with a state actor

---

[4] In the present case, Plaintiff appears to assert claims under both the joint action theory and conspiracy theory (Counts I and II). Section 1983 claims asserted under the joint action and conspiracy theories entail a "very similar" analysis. *Winski*, 973 F. Supp. 2d at 428. *See also Ciambriello*, 292 F.3d at 324 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 267 (1966)). Moreover, the allegations under each Count in the Amended Complaint are virtually identical—the conspiracy claim merely adds language specific to a conspiracy. (*See* Am. Compl. ¶¶ 86–92.) Accordingly, the Court jointly considers these claims.

[5] *See Concepcion* for a detailed discussion of the continuing viability of *Ciambriello* in the Second Circuit. 2008 WL 2020363, at *3–5.

does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. Though "conclusory allegations of a §1983 conspiracy are insufficient, [the Second Circuit has] recognized that such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (internal quotations and citations omitted).

While the provision of false statements by a private actor to law enforcement personnel, standing alone, is insufficient to establish § 1983 liability,[6] the Amended Complaint, when viewed in the light most favorably to Plaintiff, contains information from which the Court may infer an agreement between Defendants Imperio and Gorish to cause Plaintiff's false arrest. Notably, the Amended Complaint alleges that Defendants Imperio and Gorish had a personal relationship that predated their agreement to have Plaintiff falsely arrested for stalking Defendant Gorish. *See Vazquez*, 2004 WL 2404224, at *5 (noting that allegations of "special connections" between the private actor and police may substantiate an agreement or concerted action). Additionally, based upon their personal relationship, Defendant Gorish agreed to supply Defendant Imperio with false allegations regarding Plaintiff with the aim of causing Plaintiff's arrest and prosecution. (Am. Compl. ¶¶ 46–49.) In furtherance of that agreement, Defendant Gorish contacted the police department and made statements regarding Plaintiff's excessive attempts to contact Defendant Gorish and threats regarding her relationship with Defendant

---

[6] *See Vazquez v. Combs*, No. 04-cv-4189 (GEL), 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("But merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.") (citing *Jones v. Maples/Trump*, No. 98-cv-7132 (SHS), 2002 WL 287752, at *5 (S.D.N.Y. Feb. 26, 2002) ("providing false information to an arresting officer is not, by itself, sufficient to state a claim against [a] private party under § 1983."); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n. 21 (1982) ("[W]e do not hold today that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law") (internal quotation and citation omitted)); *Moreno*, 2014 WL 3887210, at *3-4 (citing *Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)); *Winski*, 973 F. Supp. 2d at 429 ("even assuming that [private actor] had deliberately provided false information to the police, such provision alone is not sufficient to form the basis of a conspiracy claim."); and *Valez v. City of New York*, No. 08-cv-3875 (DLC), 2008 WL 5329974, at *4–5 (S.D.N.Y. Dec. 16, 2008).

Imperio.  (*Id*. ¶ 50.)  Defendant Imperio also caused Defendant Gorish to sign a false affidavit incorporating these statements to support a criminal charge of stalking.  (*Id*. ¶ 53.)  These allegations are sufficient to plead joint action or a conspiracy between Defendants Gorish and Imperio.  It is not the function of this Court at the motion to dismiss stage "to judge how believable these allegations are, or the likelihood they will be borne out at later stages of this case, but rather to assess whether Plaintiff[] [has] plausibly pleaded the elements of the claim." *Dunkelberger v. Dunkelberger*, No. 14-cv-3877 (KMK), 2015 WL 5730605, at *22 (S.D.N.Y. Sept. 30, 2015).  *See also Lucas v. Novogratz*, No. 01-cv-5445 (GEL), 2002 WL 31844913, at *5 (S.D.N.Y. Dec. 18, 2002) ("Of course, it remains to be seen whether these allegations can be proved, and even if they can be, the inference of conspiracy is hardly compelling.").  As Plaintiff has pled adequately the elements of the § 1983 claims against Defendant Gorish, the Court declines to dismiss those claims.

**II.     False Arrest**

"Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Barua v. Barua*, No. 14-cv-5107 (MKB), 2015 WL 4925028, at *4 (E.D.N.Y. Aug. 18, 2015) (citations and quotations omitted).  "'A civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution.'" *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) (quoting *Mesiti v. Wegman*, 307 A.D.2d 339, 763 N.Y.S.2d 67, 69 (2d Dep't 2003) (internal quotation marks and citations omitted)).  The provision of

incorrect information by a civilian complainant will not give rise to a false arrest claim if the complainant has a "reasonable basis" for his or her belief that the plaintiff committed a crime. *Biswas*, 973 F. Supp. 2d at 519. "However, a complainant can be held liable for false arrest if the complainant 'intentionally provided false information' to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report. *Id*. (quoting *Brown v. Nassau Cnty.,* 306 A.D.2d 303, 760 N.Y.S.2d 655, 655–56 (2d Dep't 2003)). *See also Barua*, 2015 WL 4925028, at *4 (collecting cases).

Plaintiff alleges (1) that Defendant Gorish knowingly made false statements to the police concerning Plaintiff's harassing behavior, and (2) Defendant Gorish memorialized those false statements in an affidavit to support a criminal charge of stalking against Plaintiff. (Am. Compl. ¶¶ 50–53.) These allegations are sufficient to state a claim for false arrest against Defendant Gorish. *See Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006), *on reconsideration in part*, 489 F. Supp. 2d 209 (E.D.N.Y. 2007), *aff'd sub nom. Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196 (2d Cir. 2010) ("Contrary to defendants' argument, even where there is no claim that a defendant actually restrained or confined a plaintiff, a claim of false arrest . . . may lie where a plaintiff can show that defendants instigated his arrest, thereby making the police agents in accomplishing their intent to confine the plaintiff. Such an action will lie where the defendants lacked reasonable cause for their belief in the plaintiff's culpability.") (internal quotations and citations omitted).

### III.  Malicious Prosecution

"Under New York law, to establish a claim for malicious prosecution, a plaintiff must prove (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with

malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Toomer v. Cellco P'ship*, No. 11-cv-7515 (PAE), 2012 WL 2953831, at *6 (S.D.N.Y. July 20, 2012) (citing *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)). "'Merely giving false information to the authorities does not constitute initiation of the proceeding without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police . . . .'" *Estiverne v. Esernio-Jenssen*, 581 F. Supp. 2d 335, 348 (E.D.N.Y. 2008) (quoting *Lupski v. Cty. of Nassau*, 32 A.D.3d 997, 998, 822 N.Y.S.2d 112 (2d Dep't 2006)); *Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, No. 07-cv-5441, 2009 WL 817852, at *3 (E.D.N.Y. Mar. 27, 2009) ("Giving information to the police that is known to be false qualifies as the commencement of a prosecution."). *See also Emanuel v. Griffin*, No. 13-cv-1806 (JMF), 2013 WL 5477505, at *8 (S.D.N.Y. Oct. 2, 2013). Similar to Plaintiff's false arrest claim, Plaintiff does not allege merely that Defendant Gorish supplied the police with information in support of Plaintiff's arrest for criminal stalking. Instead, the Amended Complaint alleges that Defendant Gorish supplied the police with information that *at that time she knew to be false*. (Am. Compl. ¶ 51.) Accepting the well-pled, factual allegations in the Amended Complaint as true, Plaintiff has stated a claim for malicious prosecution against Defendant Gorish sufficient to withstand a motion to dismiss.

### IV.   Malicious Abuse of Process

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d

Cir. 1994).[7]  "In order to be found to have issued process, a defendant must have promoted or facilitated the prosecution." *Rivers*, 2009 WL 817852, at *5 (citing *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)).  The intentional provision of false information regarding a plaintiff's crimes to cause a plaintiff's false arrest "is sufficient to constitute issuance of process." *Id*.  As discussed *supra*, the Amended Complaint alleges that Defendant Gorish knowingly supplied law enforcement personnel with false information to cause Plaintiff's false arrest.  Therefore, Plaintiff has alleged sufficiently the first and second elements of a malicious abuse of process claim.

Defendant Gorish argues that dismissal of the malicious abuse of process claim is appropriate because Plaintiff does not plead adequately a collateral objective—the third element. (Memorandum of Law in Support of Defendant Joy Gorish's Motion to Dismiss for Failure to State a Claim for Which Relief May be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s Mot."), ECF No. 84 at 12.)  "For the collateral objective element to be satisfied, the plaintiff 'must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Rivers*, 2009 WL 817852, at *5 (quoting *Savino*, 331 F.3d at 77).  Deprivation of liberty, embarrassment, inconvenience, and legal expenses are direct, rather than collateral, consequences of arrest that are insufficient to support a malicious abuse of process claim. *Van Houtven v. Adams*, No. 13-cv-1964 (CM), 2014 WL 1338066, at *3 (S.D.N.Y. Apr. 3, 2014), *aff'd*, 605 F. App'x 37 (2d Cir. 2015)).  Furthermore, "retaliation for some offense will not suffice as a collateral motive" in an abuse of process claim. *Coleman v. N.Y.C.*, 585 F. App'x 787, 788 (2d Cir. 2014).  Simple malicious motive will likewise fail as a collateral motive. *Peter L. Hoffman, Lotte, LLC v. Town of Southampton,* 523 F. App'x 770, 771 (2d Cir. 2013).  Here,

---

[7] "'The torts of malicious prosecution and abuse of process are closely allied.  While malicious prosecution concerns the improper issuance of process, [t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Rivers*, 2009 WL 817852, at *5 (quoting *Cook*, 41 F.3d at 80 (quotation omitted, alterations in original)).

Plaintiff alleges that Defendant Gorish falsified statements against Plaintiff in retaliation for Plaintiff ending her relationship with Defendant Imperio and reporting Defendant Imperio's conduct to the New York State police. (Am. Compl. ¶ 73.) As retaliation does not suffice as a collateral motive, Plaintiff fails to establish the third element of an abuse of process claim.[8] Accordingly, the Court dismisses Plaintiff's malicious abuse of process claim.

## CONCLUSION

For the foregoing reasons, Defendant Gorish's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. The Court dismisses the malicious abuse of process claim against Defendant Gorish. The Court respectfully directly the Clerk to terminate the motion at ECF No. 83.

Dated: June 9, 2016
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[8] The Court finds the Court of Appeals' explanation set forth in *Hauser v. Bartow*, 273 N.Y. 370, 7 N.E.2d 268 (1937) particularly helpful in understanding the abuse of process claim.

> It is not enough that the actor have an ulterior motive in using the process of the court. It must further appear that he did something in the use of the process outside of the purpose for which it was intended. (citation omitted). Every one has a right to use the machinery of the law, and bad motive does not defeat that right. There must be a further act done outside the use of the process— a perversion of the process. If he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process. He may be liable for malicious prosecution, but the distinction between these two wrongs must be kept in mind. As soon as the actor uses the process of the court, not to effect its proper function, but to accomplish through it some collateral object, he commits this tort. A concrete example may make this more inteligible. If one resorts to legal process to have another declared incompetent, and uses it for that purpose, he does not commit the wrong, though he may be guilty of another wrong, no matter what his motives, hopes, or expectations may be. But if he makes use of that process not for the purpose of attaining its proper end, but to extort money, or to coerce action, that is a perversion of process.

273 N.Y. at 374, 7 N.E.2d at 269–70.