UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/19/2017

LAURA MORITZ,

                Plaintiff,

   -against-

TOWN OF WARWICK, TOWN OF GOSHEN,
MATTHEW IMPERIO, individually and as an
Employee of the Town of Goshen, BRETT M.
LUKACH, individually and as an employee of the Town
of Warwick, MICHELE LEA BIASO and JOY
GORISH,

                Defendants.

No. 15-cv-5424 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Laura Moritz ("Plaintiff" or "Moritz") brings this action against Defendants the

Town of Goshen, Matthew Imperio ("Imperio"), individually and as an employee of the Town of

Goshen, the Town of Warwick, Brett M. Lukach ("Lukach" or "Officer Lukach"), individually

and as an employee of the Town of Warwick, Michele Lea Biaso ("Biaso"), and Joy Gorish

("Gorish"), (collectively, "Defendants"),[1] alleging claims pursuant to 42 U.S.C. § 1983 for denial

of civil rights and conspiracy to deny civil rights, as well as state law claims of false arrest,

malicious prosecution, malicious abuse of power, and failure to supervise or train.[2]  Before this

Court are Gorish's and Biaso's motions for summary judgment, and Defendant/Counter-Claimant

Imperio's motion to amend his counterclaims, and for summary judgment on those claims.  For

---

[1] In December 2016, Stipulations of Voluntary Dismissal and Discontinuance were entered as to Defendants Officer
Lukach, individually and as an employee of the Town of Warwick, the Town of Warwick (ECF Nos. 168, 170), the
Town of Goshen, and Imperio, individually and as an employee of the Town of Goshen (ECF No. 169.)  Thus, as to
Plaintiff's claims, only those against Biaso and Gorish remain to be addressed in this summary judgment Opinion.
[2] On June 9, 2016, this Court dismissed Plaintiff's malicious abuse of process claim as against Gorish.  (ECF No.
121.)

the following reasons, Defendants Gorish's and Imperio's motions are GRANTED in part and DENIED in part, and Defendant Biaso's motion is GRANTED.

## BACKGROUND

The following facts are drawn from the parties' 56.1 submissions and the record, and are undisputed unless otherwise noted.

Imperio is a police officer for the Town of Goshen. (*See* Pl. 56.1 Reply Imperio Mot. Sum. Judgment, ¶ 1, ECF No. 182.) Plaintiff and Imperio were previously involved in a romantic relationship from September 2010 through January 16, 2014. (*Id*. ¶¶ 2, 3.)

Gorish meet Imperio in 1998 or 1999, they were friendly during subsequent years but soon "lost touch." (*See* Pl. 56.1 Reply Gorish Mot. Sum. Judgment, ¶ 4, ECF No. 192.) Gorish and Imperio never dated. (*Id*. ¶ 7.) Gorish contends that in December 2011, she and Imperio had a "chance encounter" during the time Imperio and Moritz were dating. (*Id*. ¶¶ 9, 10.) Gorish gave Imperio her phone number. (*Id*. ¶ 11.) Although Gorish and Imperio conversed in 2012, according to Imperio, the two had no conversations in either 2013 or 2014. (*Id*. ¶¶ 14, 15.)

In February 2012, Plaintiff began calling Gorish; Plaintiff's phone records reflect that she placed multiple calls to Gorish on both her cell and home phone on multiple occasions, at times blocking her number. (*Id*. ¶¶ 16, 26-29, 33.) Plaintiff contends she initially called Gorish's phone because she saw Imperio received a call to his cell phone during the night and called the number back to determine the identity of the caller. (*Id*. ¶ 16.)

Gorish received multiple calls on various occasions from Plaintiff's cell and home phone over the course of 2012 through at least mid-March 2014 (*Id*. ¶¶ 28, 29; Gorish 56.1 Supp., at 7; Haworth Decl. in Further Supp. Gorish Mot Dismiss, Ex. P, ECF No. 193). According to Officer Lukach and Imperio, in April 2012 Officer Lukach reached out to Imperio and asked (or left a

voice mail requesting) that Imperio tell Plaintiff to stop calling Gorish.  (*Id*. ¶ 36.)  Later, in July 2012, Gorish reported two blocked calls to the Warwick Police Department which, according to phone records, originated from Moritz's phone.  (Gorish Reply to Pl. 56.1 Statement and Supp. Facts ("Gorish 56.1 Supp."), ¶ 8, ECF No. 194.)  In connection with an August 2012 criminal complaint, Officer Lukach informed Gorish that after she had made a complaint in April 2012, Officer Lukach reached out to Imperio, who was dating Moritz, to ask Plaintiff to stop calling Gorish.  (Pl. 56.1 Reply to Gorish, ¶ 44.)

In December 2013, Gorish also received a call from Plaintiff's home phone number, though the parties dispute whether it was from Plaintiff or Imperio, who lived with Plaintiff and had access to her land lines at times.  (Gorish 56.1 Supp. ¶¶ 12, 13.)  Around this same time, Gorish reached out to Officer Lukach regarding the status of her complaint, to which Lukach responded that she could not bring a harassment charge on the basis Gorish had not reported a threat of harm.  (*Id*. ¶¶ 17-19.)  Officer Lukach told Gorish it might be possible to bring a charge of stalking in the fourth degree, but that Gorish would need to update her deposition to articulate the pattern of calls causing Gorish mental stress after the time Plaintiff had been asked to stop.  (*Id*.)  In January and February 2014, Gorish contacted the police to inquire as to the status of her complaints again, though it appears she had not received calls since December 2013.  (*Id*. ¶¶ 26-30.)  On March 4, 7 and 20, 2014, Plaintiff also called Gorish's cell phone.  (Pl. 56.1 Reply to Gorish, ¶ 39.)

On June 5, 2014, Plaintiff was arrested on stalking charges based on Gorish's complaint, which were subsequently dropped by the district attorney's office.  (*Id*. ¶¶ 17, 18, 24.)  Plaintiff subsequently filed the instant action alleging, *inter alia*, Imperio and Gorish conspired to have her arrested, and that they provided and relied on false statements to bring about her arrest and prosecution "without probable cause."  (*Id*. ¶¶ 19, 20.)  Plaintiff's complaint also alleges that

Imperio and Gorish filed false affidavits and provided several false statements to the police in connection with the stalking charge. (*Id.* ¶¶ 23, 24.)

Finally, as to Biaso, she and Imperio first met in October 2013, when she went to the Goshen Police Department to make a harassment complaint against her husband. (Pl. 56.1 Reply to Biaso Mot. for Sum. Judgment ("Pl. 56.1 Reply to Biaso"), ¶¶ 17-24, ECF No. 191.) A month later, Imperio and Biaso encountered one another at a bar, added each other on Facebook, and began speaking socially in November or December 2013. (*Id.* ¶¶ 28-34.) At some point thereafter, though the parties dispute the timeline, Imperio and Biaso began to date, and this relationship came to an end in the fall of 2014. (*Id.* ¶ 38.) On January 16, 2014, Plaintiff saw that Biaso had looked at her Linkedin page and confronted Imperio about Biaso. (*Id.* ¶¶ 40-43.) After this confrontation, Imperio reported to the Monroe Police that Plaintiff threw coffee on him and punched him in the back of the head. (*Id.* ¶ 47.) On January 20, 2014, he told the police he wanted to bring charges against Plaintiff. The following day, Plaintiff received a call informing her of the charges. (*Id.* ¶¶ 47-51.)

On January 16, 2014, the same day as the aforementioned confrontation between Plaintiff and Imperio, Plaintiff called Biaso at her place of employment. (*Id.* ¶ 57.) That afternoon, Plaintiff began to text Biaso on her cell phone, though the parties dispute whether this contact was welcomed. (*Id.* ¶¶ 63, 65.) Plaintiff texted Biaso lewd messages she contends she received from Imperio, and sent at Biaso's request. (*Id.* ¶¶ 66-69.) A review of the text messages also indicate that Biaso informed Plaintiff that she would bring charges against her if Plaintiff continued to contact her. (*Id.* ¶ 72.) On January 17, 2017, Biaso also told Plaintiff to stop contacting her. (*Id.* ¶ 80.) Despite this, Plaintiff contends that the parties continued to exchange text messages. (*Id.* ¶

81.)  On February 11, 2014, Plaintiff called Biaso's cell phone.  (*Id*. ¶ 115.)  The parties stopped communicating after this date.  (*Id*. ¶ 132.)

At a later date in 2014, Plaintiff called Biaso, blocked her phone number and presumably hung up before Biaso answered.  (*Id*. ¶ 133.)  On April 15, 2014, Biaso went to the Town of Goshen Police Department to report receiving "hang up" calls.  (*Id*. ¶ 143.)  Imperio was the only officer in the station and took Biaso's report about the unknown calls; she did not make a written complaint at this time.  (*Id*. ¶¶ 147, 151.)  Imperio prepared a phone record request indicating Biaso thought the calls were coming from her ex-husband.  (*Id*. ¶¶ 152-156.)  When Imperio subsequently received and reviewed the records, he discovered the "hang-up" calls were from Plaintiff.  (*Id*. ¶ 163.)  Thereafter, Biaso's complaint was handled by another officer.  (*Id*. ¶ 166.)  Biaso did not recall or know the name of the officer.  (*Id*. ¶ 173.)  The new officer prepared her supporting deposition, criminal complaint and other accompanying documents for the purpose of pursuing the criminal charge against Plaintiff.  (*Id*. ¶¶ 180-182.)  On April 25, 2014 an arrest warrant was issued for Plaintiff, who was arrested  and "processed" on May 5, 2014 but did not spend time in jail.  (*Id*. ¶¶ 202-207.)   Imperio did not speak with anyone at the District Attorney's Office about Biaso's complaint.  (*Id*. ¶ 209.)

## STANDARD ON A SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—
> or the part of each claim or defense—on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment
> as a matter of law.

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of

any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

### I. Defendant/Counter-Claimant Imperio

#### a. Imperio's Motion to Amend His Counter-Claims

Imperio moves to amend his counter claims against Moritz to conform to evidence uncovered during discovery under Federal Rule of Civil Procedure 15(a). (*See* Imperio Mem. in Supp. Mot Amend and for Sum. Judgment ("Imperio Mem."), at 8, ECF No. 178.) Imperio's motion is granted in part for the following reasons.

Under New York law the statute of limitations on defamation claims is one year. *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 404 (S.D.N.Y. 2004) (citing N.Y. C.P.L.R. § 215(3) (McKinney 2002)). The one year period accrues from the date that the defamatory statement is published or uttered. *Id.* Imperio contends, and Moritz concedes, that some of the proposed

amendments are timely to the extent that they occurred within a year from the date that Imperio first requested leave to move to amend his counter claims on July 7, 2016, which tolled the state of limitations pursuant to this Court's Individual Rules. (*See* Imperio Mem. at 10; Pl. Opp. to Imperio Mot ("Pl. Mem. Re Imperio"), at 8, ECF No. 181.) Accordingly, Imperio is granted leave to amend his pleadings to include claims for defamation as follows: that in November 2015, Moritz falsely told a Ms. Breitfeld that Imperio had sexual relations with an under-aged girl, and that in Fall 2015, she told a Ms. Satriano that Imperio raped a 15-year old. (*Id*. at 7.)

As to the proposed amendments that fall outside of the statute of limitations, Imperio argues these claims relate back to his original counter claims. (*See* Imperio Mem. at 11.) These new allegations include that, at some point in the year of 2014, Moritz told Ms. Marines that Imperio had sexual relations with an under-aged girl; on "multiple occasions," without any specification as to time period, Moritz falsely told a Ms. McNamara and a Ms. Williamson that Imperio had sexual relations with an under-aged girl; after August 2014, Moritz told Ms. Marines that Imperio had his guns taken away by the police department where he worked; after filing this action in July 2015, Moritz discussed the allegations of this suit with, and told Ms. Brietfeld that Imperio was involved in and "called in favors" to effectuate her arrest; after filing this action, Moritz also discussed the allegations of this suit with Ms. Williamson and falsely told her that Imperio conspired with others to have her arrested; and, in December 2014, Moritz told Ms. Satriano that Imperio conspired to have her arrested to take revenge against her. (*See id*. at 7.)

An amendment to a pleading "relates back" if, in relevant part, if it arises from the same conduct, transaction or occurrence, as set out or "attempted to be set out" in the original pleading. Fed. R. Civ. P. 15(c)(1). "In determining whether defamatory statements relate back to similar defamatory statements that are part of the original complaint, the crucial inquiry is whether the

opposing party had adequate notice." *Jewell v. Capital Cities/ABC, Inc.*, 97-CV-5617 (LAP), 1998 WL 702286, at *2 (S.D.N.Y. Oct. 7, 1998) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged.")

As to the amendments regarding Moritz's comments that Imperio had sexual relations with under-aged girls, though the content is similar to that of the original complaint, proposed amendments publishing the same information to new third-parties or on new dates has been denied as failing to "relate back" in accordance with the federal rules. *See id.* (citing *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) (finding defamatory statement did not relate back even though it involved the same content and was spoken by an original defendant at a different time); *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 186 (D. Kan.1989) ("plaintiff set forth in his amended petition not alterations, but new instances of defamation. While the content of the defamatory statements was the same or similar to the content of statements alleged to be defamatory in plaintiff's original petition, the *new counts named new parties to whom the alleged defamatory words were published as well as new dates of publication*) (emphasis added)); *see also Hirsch v. Suffolk Cty.*, 08-CV-2660 (JS) (AKT), 2015 WL 1275461, at *8 (E.D.N.Y. Mar. 18, 2015), *aff'd sub nom.*, 684 F. App'x 53 (2d Cir. 2017) ("where the new claims arise from conduct that is separate from yet related to the conduct alleged in the earlier pleading, the new claims will not relate back"). Allowing such claims to relate back would essentially allow a plaintiff to amend around the statute of limitations. This is even more so when the amendments relate to statements with entirely different content than that alleged in the original counter claims. *See Pruiss*, 912 F. Supp. at 106 ("under New York law, every distinct publication of a libelous writing or slanderous statement gives rise to a separate cause of action … An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been

alleged."). For these reasons, the Court finds that the aforementioned amendments do not arise out of the conduct alleged in the original complaint such that Moritz would be placed on notice, and thus do not relate back to the original counter claims. As such, Imperio's motion to amend his counter-claims to add claims that fall outside the statute of limitations, as detailed on page 7 of this Opinion, is denied.

b. Imperio's Motion for Summary Judgment

Imperio moves for summary judgment on his claims of defamation in the form of slander and libel *per se*. (*See* Decl. of Mark Radi Supp. Mot. to Amend and for Sum. Judgement ("Radi Decl."), Ex. B, Ans. Am. Compl. with Counter Claims ("Orig Claims"); Ex. C, Imperio First Am. Counter Claims ("Am. Claims"), ECF No. 176.)

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (citing *Biro v. Condé Nast*, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012) (quoting *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y.2000))); *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) ("Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name.") (citing *Hogan v. Herald Co.,* 446 N.Y.S.2d 836, 839 (4th Dep't 1982), *aff'd,* 58 N.Y.S.2d 538 (N.Y. 1982)). "Under New York law, defamation is defined as 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him . . .'" *Cain v. Esthetique*, 182 F. Supp. 3d 54, 72 (S.D.N.Y. 2016) (citing *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 549 (alteration in original) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (S.D.N.Y.2011))).

The elements of a defamation claim under New York law, whether for libel or slander, are: a false and defamatory statement regarding the plaintiff; published without privilege or authorization to a third party; fault on the part of the publisher; and either that the statement constitutes defamation *per se*,[3] or caused "special harm" to the plaintiff. *See Lan Sang*, 951 F. Supp. 2d at 517; *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 432 (E.D.N.Y. 2013). For the statement to constitute defamation *per se*, the statement must "(i) charge an individual with a serious crime, (ii) injure another in his or her trade, business, or profession, (iii) claim an individual has a loathsome disease, or (iv) impute unchastity to a woman." *Daniels v. Kostreva*, 15-CV-3141 (ARR) (LB), 2017 WL 823583, at *8 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 519227, *reconsideration denied*, 2017 WL 818371 (E.D.N.Y. Mar. 1, 2017) (citing *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76-77 (S.D.N.Y. 2012) (internal citations omitted)). Additionally, "'[t]ruth is an absolute defense to an action based on defamation,'" *Yong Ki Hong*, 951 F. Supp. 2d at 433 (citing *Goldberg v. Levine*, 949 N.Y.S.2d 692, 693 (2d Dep't 2012) (internal quotations omitted); as such, "where the parties are private entities and the statements concern matters of only private concern, the defendant bears the burden of proving the statement's truth as an affirmative defense," *id.*

### i. Slander

Imperio's claims of slander are premised upon the allegations that Moritz told individuals that he was suspended from his job as a police officer, and that he had improper sexual activity with a minor and "raped" a 15-year-old-girl. (Am. Claims, ¶¶ 4, 5, 7, 18, 19; Orig. Claims, ¶¶ 139, 141, 142.)

---

[3] *See Stern v. Cosby*, 645 F. Supp. 2d 258, 271-72 (S.D.N.Y. 2009). ("[W]here the statement is so egregious that it is presumed to cause serious harm, the statement is defamatory '*per se*'—and the plaintiff need not prove special damages, i.e., economic or financial loss.")

### 1. Statements Regarding Improper Sexual Activity

Specifically, Imperio alleges that, on August 2, 2015, Moritz told Carlos Sanchez that Imperio had sexual relations with a 15-year-old-girl; that in November 2015 Moritz told Laura Brietfeld that he had sexual relations with an under-aged girl (Am. Claims ¶¶ 5, 15); and that in Fall of 2015, Moritz told Dianne Mitchell Satriano that he had raped a 15-year-old girl (Am. Claims ¶ 7.)

As to these accusations, the record reflects in relevant part that Moritz testified she had been told by another woman by the name of Cher Lagattuta, that the then-minor in question, Ms. Williams, had written a letter to Ms. Lagattuta. (Radi Decl., Ex. E ("Moritz Dep. Tr."), 166:11-167:23.) Moritz also testified that, during a phone call, Ms. Lagattuta read her Ms. William's letter, which stated Imperio and Williams had sex. (*Id*. 167:16-17.) Moritz further testified that in August 2015 (*id*. 463:4-5; 504), she told Carlos Sanchez, who was described as a "retired police officer," that she had "been told things" about Imperio's "past sexual escapades with under aged [sic] girls" (*id*. 464:15-17; 504: 8-14), that he had "improper sexual conduct with a minor" (*id*. at 511:2-7), that at a later date she told Sanchez that Imperio "pursues young girls" (*id*. 505:8), and that it was "brought to [her] attention that he may be involved with … sexual activities with under aged [sic] girls, (*id*. 505:17-20).[4] Ms. Satriano testified that in 2014, Moritz told her that Imperio "raped a 15 or 16-year-old way back in the day," (Radi Decl., Ex. H ("Satriano Dep. Tr."), 19:12-25). Ms. Breitfeld, who described herself as a friend of Plaintiff, testified that Moritz had told her that a woman named Cher told Moritz that Imperio had a "situation with an under aged [sic]

---

[4] In her testimony Plaintiff appears to state that her conversation with Sanchez took place "*after*" a "playoff game" which occurred in April 2015 (Moritz Dep., 463:18-20), but also appears to have stated that this conversation occurred in May 2014. Based upon the transcript excerpts provided, it appears that Moritz may have misspoken, or that this was incorrectly transcribed. The Court notes that Imperio states in his 56.1 Statement that the conversation between Moritz and Sanchez occurred in May 2015. Plaintiff, though offering a general, largely non-responsive denial, void of any reference to the record and in conflict of Local Rule 56.1, does not directly dispute that this conversation occurred in May 2015.

female." (Radi Decl. Ex. I ("Breitfeld Dep. Tr."), 13:2-6). Both Williams and Imperio testified that they had no sexual contact with one another (Radi Decl., Exs. F, G). Notably, Plaintiff fails to point to a single piece of evidence in the record to dispute the testimony offered by Williams or Imperio. In fact, Moritz fails to include a single citation to the evidentiary record in either her 56.1 Statement, or, for that matter, in her Opposition Memorandum.[5]

The Court reminds the parties that Local Civil Rule 56.1(b) requires that the non-moving party's "papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph responding to each numbered paragraph in the [56.1] statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b).

Moritz failed to submit a 56.1 statement in opposition to Imperio's motion as required by the Court's local rules. "'Judges are not like pigs, hunting for truffles buried' in the record." *Lore v. City of Syracuse*, 5:00-CV-1833 (DNH) (DEP), 2008 WL 5378370, at *10 (N.D.N.Y. Dec. 22, 2008) (citing *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). Thus, Moritz's failure to specifically controvert the statements made in Plaintiff's 56.1 statement generally results in Imperio's statements being deemed admitted for purposes of this motion. Loc. Civ. R. 56.1(c); *see Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 658 (S.D.N.Y. 2012). Nevertheless, the Court has conducted its own review of the record. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("While a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to

---

[5] Moritz includes citations to her own affidavit, and a few references to portions of deposition testimony in the Fact section of her memorandum. (*See* Pl Opp. to Imperio, at 1-3.) However, her "Argument" section, meant to directly address the arguments set out in Imperio's papers, contains broad statements about what the evidentiary record contains, but is devoid of a single record citation. (*See id*., at 4-7.)

conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal quotation marks and citations omitted).

Drawing all reasonable inferences in Moritz's favor, as to the allegation that Moritz stated that Imperio raped an under aged girl, there is a material issue of fact that warrants the denial of summary judgment. Plaintiff denied ever making the statement during her deposition. (*See, e.g.*, Radi Decl., Ex E, 511:1-7.) Since such denial requires a credibility determination regarding a material fact, this portion of Imperio's motion seeking for summary judgment on his defamation claim must be denied.

Turning to the remaining allegedly slanderous statements, Moritz asserts—without citation to the record—that "virtually everything . . . is disputed and totally incapable of being reconciled on motion papers." (Pl. Opp. to Imperio, at 1.) Notably, as to the statements regarding Imperio's alleged improper involvement with Williams, Moritz does not contend that they fail to qualify as slander under the law. (*See id*. at 4-7.) Instead, she asserts that when she shared with others that Imperio had been involved with Williams, she was merely relaying information she was told by others, and that there exist issues of credibility precluding summary judgment. (*See* Pl. Opp. to Imperio, at 3-5.)

Moritz asserts that she was "merely relaying" a "'fact' told to her" by others, and "made it clear in subsequent conversations" that she was conveying information obtained from others concerning Imperio's involvement with under-aged girls. [6] (Pl. Opp. to Imperio, at 3, 6.) Plaintiff suggest merely repeating what she was told to her cannot be deemed defamatory. In support, Moritz incorrectly cites to *Thomas H. v. Paul B*., 18 N.Y.3d 580, 586, (N.Y. 2012), wherein the

---

[6] The Court notes Moritz's contention that she consistently emphasized that she was merely repeating information obtained from others about Imperio's improper conduct with under age girls is disputed by sworn testimony from individuals that identify themselves as Moritz's friends. (See, e.g., Radi Decl. Ex. H, 19:12-25.)

New York Court of Appeals held "the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character." *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 586 (2012); (Pl. Opp. to Imperio, at 6.) In *Thomas H.*, the party accused of defamation argued that "even if they made the statements that were attributed to them, those utterances were not actionable because they had truthfully relayed their daughter's accusations [accusing plaintiff of rape] and merely expressed their belief in her veracity." 18 N.Y.3d 580, at 584. The court rejected this argument, finding that a "reasonable listener would have understood [defendant] intended to label [plaintiff] as [having assaulted a child.]" *Id.* at 584. Hence, the Court concluded, although the third-party realized the purported statements were derived from a different source and that the speaker was merely relaying their content, the statements could still be actionable. *Id.* (denying summary judgment on basis movant had not met burden due to factual discrepancies in the record). *Thomas H.* is instructive. Accordingly, Moritz's contentions lacks merit and does not foreclose the granting of summary judgment.[7]

---

[7] The Court is unpersuaded by Moritz citation to *Brian v. Richardson*, which is factually distinct from the instant action. *See Brian v. Richardson*, 87 N.Y.2d 46, 54 (1995) ("To be sure, the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character. Here, however, the repeated charges were included in the article not necessarily to convince the reader of plaintiff's dishonesty but rather to demonstrate the need for an investigation that would establish the truth or falsity of the charges. In sum, *both the immediate context of the article* itself a*nd the broader context in which the article was published made it sufficiently apparent* to the reasonable reader t*hat its contents represented the opinion of the author* and that its specific charges about plaintiff were *allegations and not demonstrable fact*.") (emphasis added); *see also James v. DeGrandis*, 138 F. Supp. 2d 402, 420 (W.D.N.Y. 2001) ("Rumor as a defense to defeat this cause of action is unavailing.") (citing *Alianza Dominicana Inc. v. Fermin Luna*, 229 A.D.2d 328, 645 N.Y.S.2d 28, 30 (1st Dep't1996) ("[N]otwithstanding the cautionary language used by [the defendant], such as 'they say' or 'rumor in the streets say', [defamatory] statements are actionable," where a reasonable person would have understood the statements as "'assertions of provable fact.'"); *Flamm v. American Association of University Women*, 201 F.3d 144, 152 (2d Cir. 2000) (citations omitted) ("the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character.")); *Sterling Doubleday Enterprises, L.P. v. Marro*, 656 N.Y.S.2d 676, 678 (1997) (inferring statement can be defamatory even if it is a matter of "common knowledge").

Moritz assertion that there are issues of credibility precluding summary judgment, also lacks merit. Moritz suggest that the Court should disregard uncontroverted deposition testimony from both Imperio *and* Williams, because "it is impossible for the Court to rule as a matter of law that no such relationship existed just based upon their denial of the same," and that a jury may find that Imperio and Williams are both lying to "cover[] up an improper sexual relationship when she was a high school student." (Pl. Opp. to Imperio, at 4.) To challenge Imperio's credibility, Moritz cites to instances which she contends bare on his credibility: an allegation of payroll fraud against Imperio by a fellow officer; and testimony by Imperio regarding his relationship with a woman by the name of Lea Biaso who Imperio initially met when she came to the police station seeking an order of protection against her husband. (*Id*. at 3). Moritz suggest Imperio's sworn testimony lacks credibility and that Imperio has had relationships with *women* "with whom he developed personal and sexual relationships after having some involvement in criminal investigations of their ex-husbands." (*Id*.) Plaintiff, however, points to no admissible evidence to refute Imperio's sworn statement, which was corroborated by Williams.

It is well settled:

> To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried . . . The non-movant must present more than a "scintilla of evidence,", or "some metaphysical doubt as to the material facts," . . . and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible."

*Glacken v. Inc. Vill. of Freeport*, 09-CV-4832 (DRH) (AKT), 2014 WL 1836143, at *4 (E.D.N.Y. May 8, 2014) (citing *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)).

Moritz is correct that a district court may not make credibility determinations on a motion for summary judgment, as this is a function of the jury. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). However, it is also true that when opposing a motion for summary judgment, "the [non-moving party] may not respond simply with general attacks upon the… [declarant's] credibility, but rather must identify affirmative evidence from which a jury could find" that the non-moving party has carried its burden of proof. *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, 05-CV-9478 (GEL), 2009 WL 399221, at *7 (S.D.N.Y. Feb. 18, 2009) (alterations in the original); *see McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (emphasizing that "appellee cannot defeat summary judgment . . . merely by impugning [a witness's] honesty").

Even if the Court were to deem Imperio's testimony lacking in credibility, which it does not, his testimony is corroborated by that of Williams, whose testimony is similarly uncontradicted. Moritz's challenge to Williams' testimony, based only on the notion that she could be lying to "cover up" what occurred, without any citation to record evidence, is wholly speculative and insufficient to defeat summary judgement. It is well settled, "[b]road, conclusory attacks on the credibility of a witness [do] not, by themselves, present questions of material fact" for trial. *Desia v. GE Life & Annuity Assur. Co.*, 350 F. App'x 542, 544-45 (2d Cir. 2009); *see also Ezuma v. City Univ. of New York*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009), *aff'd*, 367 F. App'x 178 (2d Cir. 2010) (citing *Crawford–El v. Britt*on, 523 U.S. 574, 600 (1998) ("[I]f the [moving party] has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility . . . ")) Moritz has pointed to no admissible evidence that either raises a material issue of fact nor cites to any case law in support of her position, as she suggest, that the court must undertake a credibility determination when resolving

a summary judgement motion.  *See Haust v. United States*, 953 F. Supp. 2d 353, 361 (N.D.N.Y. 2013) ("[t]he Second Circuit has subsequently clarified that a court's assessment of witness credibility [on summary judgment] should be confined to "certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility.")  Thus, Imperio has meet his burden, presenting evidence that the statements indicating he had sexual relations with a minor were published without his authorization to third parties by Moritz (*see supra* at, 7), and were false.

Finally, as to the injury element of a defamation claim, the Court finds that there is no factual dispute that Imperio was harmed as a result of the aforementioned defamatory statements. A statement constitutes slander *per se* sufficient to meet the injury prong of a defamation claim if it "charges the plaintiff with a serious crime" or "injures him in his profession." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 72 (S.D.N.Y. 2016).  Moritz's defamatory statements accuse Imperio of engaging in inappropriate sexual conduct with a minor, which could potentially amount to sexual abuse of a minor.  (*See* Def. Mem. at 16).)  The Court agrees with Imperio that these allegations are "injurious to his profession as a police officer who is expected to uphold the law rather than violate it," (*id.*), nor does Plaintiff contest this fact.  *See Posteraro v. Northport-E. Northport Union Free Sch. Dist.*, 11-CV-5025 (JS) (GRB), 2012 WL 3289009, at *5 (E.D.N.Y. Aug. 10, 2012) (citing *Rutman v. Giedel*, 411 N.Y.S.2d 960, 961 (2d Dep't 1979) (alleged statement that police officer was drunk on duty "shows such a lack of character as would render him unfit for his position")); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 331 (S.D.N.Y. 2010) ("As a general rule, a statement that 'tend[s] to injure the plaintiff in his or her trade, business or profession is defamatory *per se* and does not require proof of special damages to be actionable.") (citing *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001); *accord Allen v. CH Energy Group, Inc.*, 872 N.Y.S.2d

237, 238 (3d Dep't 2009) ("While the general rule provides that a defamatory statement is not actionable absent a showing of special damages, one of the recognized exceptions to such rule is when the statement imputes incompetence, incapacity or unfitness in the performance of one's profession or trade." (quotation marks and citations omitted)); *Cardali v. Slater*, 57 N.Y.S. 3d 342, 348 (N.Y. Sup. Ct. 2017) (finding "to falsely accuse someone of being terrible in their profession is actionable"); *cf. Kforce, Inc. v. Alden Pers.,* Inc., 288 F. Supp. 2d 513, 516-17 (S.D.N.Y. 2003) ("[I]t is actionable without proof of damage to say . . . of a public officer that he has accepted a bribe or has used his office for corrupt purposes . . . since these things discredit [one] in his chosen calling.") (internal citations omitted). On these bases, the Court finds that Imperio is entitled to summary judgment as to the defamatory statements made by Moritz that he was sexually involved with a minor.

### 2. Statements Regarding Imperio's Suspension From Employment

Imperio alleges that in August 2015 Moritz falsely informed Carlos Sanchez that Imperio had been suspended from his job as a police officer (Orig. Claims, ¶¶ 141-142; Am. Claims, ¶ 18), and that in June or July 2015, Moritz falsely informed a woman by the name of Melanie Nagy of the same, (Orig. Claims ¶ 142; Am. Claims, ¶ 19.) The record reflects in relevant part that Moritz conceded that she had told Sanchez and Nagy that Imperio was *demoted*, and that this was "common knowledge." (Moritz Dep., 511:8-12). Additionally, Imperio testified that Nagy told him Moritz was "at a bar" and "was telling people that [he] was suspended from [his] job, that she got [him] suspended from [his] job," and that another individual told him that Nagy had said Moritz was telling others Imperio had been suspended, (Radi Decl., Ex. F ("Imperio Dep. Tr.") 485:17-23.) Imperio testified that this statement was false. (Imperio Dep. Tr. 404:18-22.) However, he also testified that, at some point in time, his rank was "reduced" in connection with allegations of

the falsification of payroll records. (Androvic Decl, Ex. C, p 56.)  The Court notes that the record

is unclear as to whether Moritz stated that Imperio was demoted as opposed to suspended (or

dismissed).  Thus, drawing all inferences in favor of the non-moving party, the Court finds that

there is a factual dispute barring summary judgment as to Imperio's defamation claim regarding

his suspension from his employment.

      ii.   Libel

As previously indicated, "[t]o establish libel under New York law, a plaintiff must prove

five elements: '(1) a written defamatory factual statement concerning the plaintiff; (2) publication

to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per*

*se* actionability.'"[8]  *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015)

(internal citations omitted).  Imperio alleges that Moritz filed a federal complaint falsely alleging

that Imperio used his official position as a police officer to bring false charges against her and

conspired with co-defendants to use this position to have Moritz arrested and criminally

prosecuted.  (Orig. Claims, ¶¶ 159-162; Am Counter Claims, ¶ 38-42.)  Imperio also alleges that

Moritz or those acting on her behalf, disseminated the libelous federal complaint to the Time

Herald Record in July 2015 and to The Chronicle in August 2015, and that in August 2015, The

Chronicle published an article entitled "Woman sues officer for false arrest," allegedly repeating

the allegations set forth in the complaint.  (Orig. Claims, ¶¶ 170-173; Am Claims, ¶ 58-62.)

"Statements made in a pleading and fair and true reports of such pleadings are absolutely

privileged." *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1194 (S.D.N.Y.

1985); *see D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012) ("New York has

---

[8] The Court notes that Imperio neglects to set forth a legal argument to demonstrate that the evidence in the record satisfies each element of libel in his legal memorandum in support of his motion summary judgment.  In fact, Imperio's legal argument as to his libel claim is limited to three sentences with a single legal citation to *Williams v. Williams*, 23 N.Y.2d 592 (N.Y. 1969), without an explanatory parenthetical.  (*See* Def. Mem. at 17.)

traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation."). Thus, in accordance with this absolute privilege, under Section 74 of the New York Civil Rights Law, "[a] civil action cannot be maintained … [based upon] the publication of a fair and true report of any judicial proceeding...." *Id*. (citing N.Y. Civil Rights Law § 74).

However, an exception to these protections arises "where the statements [in a judicial proceeding] are made maliciously and solely for the purpose of defaming the defendant." *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 672 (S.D.N.Y. 2016) (citing *Williams v. Williams,* 246 N.E.2d 333, 337 (N.Y. 1969)). Under this exception "[a] party cannot . . . maliciously commence a judicial proceeding alleging false and defamatory charges and then circulate a press release based on the same charges and escape liability." *Reszka v. Collins*, 25 N.Y.S.3d 457, 459 (N.Y. App. Div. 2016) (citing *Williams*, 23 N.Y.2d at 599). "New York courts have consistently held that this exception is a narrow one and does not apply in the absence of any allegation that the . . . action was brought maliciously and solely for the purpose of later defaming the plaintiff." *Id*. (internal quotation marks and citations omitted). A favorable ruling on this basis requires a showing that the action was in fact brought maliciously to defame the allegedly wronged party. *Frydman*, 172 F. Supp. 3d at 672 (issuing partial denial of motion to dismiss on basis there was open question of fact as to whether action was brought maliciously to defame plaintiff.); *El Greco Leather Prod. Co. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1042 (E.D.N.Y. 1985), *aff'd*, 806 F.2d 392 (2d Cir. 1986) (noting "th[e] Court must determine, on a motion for summary judgment, whether . .. [movant] has alleged facts which, if proven, would fall within the *Williams* exception to Section 74[,]" permitting a libel claim on the basis that an action had been instituted "for the sole purpose of republishing the libelous statements set forth in the complaint").

Imperio's 56.1 Statement fails to direct the Court to any evidence that Moritz's action was brought maliciously to defame him, or that she purposely caused the complaint to be delivered to the press. These are questions of fact that cannot be resolved by the Court on a motion for summary judgement. *Bridge C.A.T. Scan Assocs.*, 608 F. Supp. at 1195 (where issue of fact existed with regard to defendant's "purposeful dissemination of the complaint as well as its malice in instituting the prior class action," Court could not resolve on summary judgment "whether statements were privileged or … [fell] within the *Williams* exception"). Accordingly, the Court denies Imperio's motion for summary judgment as to his claim for libel.

## II. Defendant Gorish

### a. Plaintiff's Section 1983 Claims

Defendant Gorish moves for summary judgment seeking to dismiss Plaintiff's Section 1983 claims on the basis that there are no material issues of facts such that Plaintiff cannot prevail as a matter of law on said claims. Plaintiff alleges both a denial of, and a conspiracy to deny her of her civil rights under 42 U.S.C. § 1983. (*See* Am. Compl., at 13-14.) To prevail on a Section 1983 claim, a plaintiff must show "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," by someone acting "under color of" state law. 42 U.S.C. § 1983.

Generally, "[t]he conduct of private persons or entities, 'no matter how discriminatory or wrongful,' … does not constitute state action and therefore cannot form the basis of a Section 1983 claim." *Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) (citing *Hooda v. Brookhaven Nat'l Lab.,* 659 F. Supp. 2d 382, 393 (E.D.N.Y.2009) (Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'") (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 837 (1982)). However, "[a] private actor may be considered to be acting under the color of state law for purposes of Section 1983 if she[:] was 'a willful participant in joint activity with

the State or its agents'" or "conspire[d] with a state official to violate the plaintiff's constitutional rights." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). "[T]o prove a private actor acted under the color of state law when she engaged in allegedly unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor." *Id.*

To establish a joint action claim, "a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff the rights guaranteed by federal law." *Steptoe v. City of Syracuse*, 09-CV-1132 (NPM) (DEP), 2010 WL 1257936, at *2 (N.D.N.Y. Mar. 25, 2010). As Gorish notes, "[t]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010); (Def Mem. at 8).

To allege a conspiracy claim, a plaintiff must demonstrate: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25.

As to allegations of joint action or conspiracy between Gorish and a state actor, Plaintiff alleges only that "Gorish and Imperio reached an agreement to cause the arrest and prosecution of Plaintiff without probable cause" whereby Gorish would create false allegations to police at the request of Imperio and Imperio would "use . . . his government employment to advance a criminal

charge against and . . . prosecut[e] . . . Plaintiff" with the assistance of Officer Lukach.   (*See* Am. Compl. ¶¶ 47-54.)

To support her claim and in opposition to defendant's motion for summary judgment, Plaintiff cites the following evidence: Imperio testified that he and Gorish had a "regular friendship"[9] (Pl. Opp. to Gorish Mot. for Sum. Judgment ("Pl. Opp. to Gorish"), at 8 (citing Hawthorne Decl., Ex. F ("Imperio Dep Tr."), 192:22-23, ECF No. 187); Imperio lived with Plaintiff from "late 2010 or beginning 2011 through May of 2013" and personally made and received phone calls from Plaintiff's landline (*see id*., (citing Imperio Dep. Tr., 427:8-428:7)); in February 2014 Imperio sent Gorish a message on Facebook expressing a desire to apologize "for all the BS [his] ex put [her] and family through" and asking if she could call him on his cell phone, which received no reply through this medium, (*see id*. (citing Luibrand Decl. in Supp. Of Pl. Opp. Sum. Judgment ("Luibrand Decl."), Ex. H, ECF No.185)); and that on two occasions in February 2014, Gorish corresponded with Officer Lukach to "check[] in" about the "stalking situation," with contact in the preceding months of December 2013 and January 2014, as well as an email on March 6, 2014. (*See id*. (citing Luibrand Decl., Ex. L)).   Finally, Plaintiff also cites to an email chain

---

[9] In support of this contention, Plaintiff cites entire sets of transcript excerpts from both Imperio's and Gorish's depositions without any pincite.  (*See* Pl. Opp. to Gorish, at 8.)  As stated previously, the parties are responsible for identifying evidence within the record to support their contentions on summary judgement.  Nonetheless, based upon a review of Plaintiff's additional submissions, she appears to argue that Imperio's testimony that he and Gorish had a "regular friendship" indicates they had a "special connection" according to *Vazquez v. Combs*, 04-CV-4189 (GEL), 2004 WL 2404224, at *5 (S.D.N.Y. Oct. 22, 2004).  (*See id.*; *see also* Pl. 56.1 Reply to Gorish, ¶ 2) (citing to Imperio's deposition transcript to indicate Imperio testified he and Gorish had a "regular friendship.")) As to *Vazquez*, Plaintiff appears to cite to the following excerpt: "In contrast, plaintiff here points to no *relationship* between the private defendants and [police officer], no statements made by the private defendants that they had *special* connections with the police or that they could use the police to pursue their private ends (through means other than simply reporting an alleged crime to the police, which does not constitute inappropriate use of law enforcement by a private party), no statements or acts by [law enforcement] that indicate that she was doing anything other than investigating a complaint of possible criminal activity."  *Vazquez*, 2004 WL 2404224, at *5; (*see* Pl. Opp. to Gorish, 8.)  Plaintiff does not elaborate on this argument.  (*See* Pl. Opp. to Gorish, 8 (stating only that "it is undisputed that defendant Gorish had a Vazquez 'special connection' with defendant Imperio.")).

between Gorish and Officer Lukach, reflecting that, on December 23, 2013, Officer Lukach wrote to Gorish indicating, after speaking with the District Attorney, that it was not possible to prosecute Gorish's complaint as aggravated harassment because "there must be some threat of harm or injury communicated;" that the district attorney said it may be possible to "charge stalking in the 4th degree" but Gorish's deposition would need to be "updated;" that she would need to be able to "articulate several calls in the recent incident in order to show an ongoing course of conduct … that occurred after [Moritz] was told to stop which was [during the year prior];" that Lukach requested Gorish bring in "any recent telephone bills showing incoming calls," that she should "report each call … as it happens to document the pattern," but that the report did not need to be taken by him and could be taken by anyone (presumably at the precinct); and, that on January 11, 2014, Gorish wrote to Lukach that she wanted to know if he had received her phone records, that she had written to him three times without response, and that if she needed to "adjust the charge cause [sic] the DA won't charge for harassment" then she "needed to get [it] done already[,] a year of this [was] way too long already!!!!" (*See id*.) Also, as reflected in the deposition testimony cited by Defendant, both Imperio and Gorish averred they had no further conversations after 2012, beyond the Facebook message Imperio sent to Gorish, to which she did not respond (as there is no record evidence of such a response). (*See* Hawthrone Decl. Ex. G ("Gorish Dep. Tr."), 47:10-13; 132:8-16; *id*. Ex. F. ("Imperio Dep. Tr."), 202:10-205:5.)

The "circumstantial" evidence referenced by Plaintiff indicates only that Imperio and Gorish were friendly and communicated in 2012, with no communication in 2013 or 2014, beyond a message from Imperio in 2014 to which Gorish did not reply;[10] that Gorish received calls from

---

[10] Plaintiff argues that the calls made from her home phone to Gorish, which Gorish contends were placed by Plaintiff, were in fact from Imperio, and because some of these calls occurred during the 2013-2014 time period, Imperio and Gorish did in fact speak during this time. Plaintiff's argument relies only upon speculation and seeks to stretch the

Plaintiff's landline during the time when Imperio was living with Moritz (which Moritz contends were made by Imperio); and that Gorish asked Lukach about pursuing a charge of stalking in the fourth degree against Moritz, after Lukach indicated, pursuant to a conversation with the district attorney, that Plaintiff's alleged conduct was insufficient to support a prosecution for aggravated assault, but that her deposition testimony would need to be updated to include the additional calls and the additional evidence would have to show a pattern for the charge to be pursued. Relatedly, Plaintiff concedes that she made calls to Gorish in 2012, 2013 and 2014 (though not consistently), multiple times in one day and after midnight on at least one occasion, and that some portion of these calls were blocked by Plaintiff. (*See* Pl. 56.1 Reply to Gorish, ¶ 16, 27, 28, 33, 39; *see also id.* ¶ 30, 49.)

Though Plaintiff is correct that "'conspiracies are by their very nature secretive operations' that 'may have to be proven by circumstantial, rather than direct, evidence, . . . conclusory allegations of a conspiracy are insufficient.'" *Peterec v. Hilliard*, 12-CV-3944 (CS), 2013 WL 5178328, at *12 (S.D.N.Y. Sept. 16, 2013) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks omitted)). The same tenet holds for claims sounding in joint action. *Hollman v. Cty. of Suffolk*, 06-CV-3589 (JFB) (ARL), 2011 WL 280927, at *8 (E.D.N.Y. Jan. 27, 2011). Furthermore, "several telephone calls and other communications" alone are not sufficient to show conspiracy or a joint action to deprive Plaintiff of her federal rights. *Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998); *see Peacock v. City of Rochester*, 13-CV-6046-(MAT), 2016 WL 2347448, at *11 (W.D.N.Y. May 4, 2016) (evidence must demonstrate that there was, at least, a "tacit understanding" between parties of a conspiratorial agreement).

---

boundaries of cicumstantial evidence; Plaintiff does not, for instance, cite to evidence that Imperio ever testified he called Gorish on Moritz's land line. (*See* Pl. 56.1 Reply to Gorish, ¶ 52.)

The evidence cited to and relied upon by Plaintiff fails to support her claim that there was a shared common goal, agreement or effort to act in concert in order to deprive Plaintiff of her constitutional rights under either a conspiracy or joint action theory. *See Bishop v. Best Buy, Co. Inc.*, 08-CV-8427 (LBS), 2011 WL 4011449, at *14 (S.D.N.Y. Sept. 8, 2011) (conspiracy claim not established on summary judgment where there is "no evidence in the record that [the defendant] was involved in a conspiracy, preconceived plan, mutual understanding or concerted action with" state actor) (alterations in the original); *Gotbetter v. Port Auth. of New York & New Jersey*, 98-CV-6762 (WHP), 2000 WL 328044, at *2 (S.D.N.Y. Mar. 28, 2000) ("to overcome a summary judgment motion, a plaintiff proceeding under [a conspiracy] theory must present sufficient evidence to support an inference of such conspiratorial conduct") (citing *Scotto v. Almenas,* 143 F .3d 105, 114 (2d Cir. 1998)); *see also Clarke v. Cty. of Broome*, 10-CV-399 (MAD) (ATB), 2012 WL 1005086, at *12 (N.D.N.Y. Mar. 23, 2012) (regarding joint action claim "a private party . . . does not become a state actor unless the police were influenced in their choice of procedure or were under the control of the private party."); *Porter–McWilliams v. Anderson,* 2007 WL 4276801, at *7 (S.D.N.Y. 2007) (no joint action found where the plaintiff alleged only that the defendants provided detective and court with information but alleged no facts suggesting that the detective was influenced in choice of procedure or was under control of the defendant[] when he filed a criminal charge against the plaintiff); *id.* ("The provision of information to, or the summoning of, police officers is not sufficient to constitute joint action with state actors for purposes of § 1983, even if the information provided is false or results in the officers taking affirmative action."). Because "[n]othing in the series of communications between [defendants], other than [plaintiff]'s unsubstantiated speculation … suggest[s] that anything untoward took place," *Scotto v. Almenas*, 143 F.3d 105, 115 (2d Cir. 1998) (granting summary judgment on

conspiracy claim), the Court finds that Plaintiff's "evidence" is insufficient to defeat Gorish's motion for summary judgment on the conspiracy claim. Since the record is void of any evidence to substantiate Plaintiff's claims of a conspiracy and of a joint action, the Court grants Gorish's motion for summary judgment and the claims are dismissed.

      b. Plaintiff's State Law Claims

          i. False Arrest

Defendant Gorish moves for summary judgement seeking dismissal of Plaintiff's false arrest claims. To prevail on a false arrest claim under New York law, a plaintiff must establish: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 376 (E.D.N.Y. 2015).

Gorish assert Plaintiff is unable to support her claim for false arrest because she is unable to establish, as a matter of law, that her confinement was not otherwise privileged. Specifically, Gorish contends she is entitled to summary judgment on the basis that Plaintiff's arrest was privileged because it was supported by probable cause, a complete defense to a false arrest claim. *Estate of Knaust v. Contreras*, 14-CV-2496 (JS) (ARL), 2017 WL 3638440, at *8 (E.D.N.Y. Aug. 23, 2017); *See also*, *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.")).

"'Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 19-20 (2d Cir. 2012); *as*

*amended* (Dec. 4, 2012) (citing *Jaegly v. Couch,* 439 F.3d 149, 153 (2d Cir. 2006). To determine whether probable cause existed for an arrest, courts assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* The Court notes that "concrete proof of each element of a crime [is not necessary] to establish probable cause," though an officer must have more than reasonable suspicion. *Barua v. City of New York*, 14-CV-584 (NRB), 2016 WL 7494875, at *4 (S.D.N.Y. Dec. 29, 2016).

Under New York law, an individual engages in stalking in the fourth degree where:

> he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . . causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person's immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct

N.Y. Penal Law § 120.45.

In support of her contention that probable cause existed for Plaintiff's arrest, Gorish asserts that the record supports each element of the crime charged, stalking in the fourth degree. (*See* Gorish Mem. 10-11.) Gorish relies on the following undisputed facts:

- Plaintiff's phone records reflect that she placed three calls to Gorish from her home phone on February 3, 2012, and four calls to Gorish on February 19, 2012, (*see* Pl. 56.1 Reply to Gorish, ¶ 27);

- Plaintiff's cell phone records reflect that she also made nine phone calls to Gorish from her cell phone between the 3rd and 9th of February 2012, one of which was placed at 1:43 a.m. while Gorish was at the hospital with her sick child, (*see id.* ¶ 28);

- Plaintiff's home phone records reflect that a total of thirty-one calls were made from Plaintiff's home to Gorish's cell phone between February 3, 2012 and March 20, 2014, some of which were made after 2:00 a.m. while Gorish was at the hospital with her ill son, (although the parties dispute whether some or all of these calls were made by Plaintiff) (*id.* ¶¶ 30, 31, 39);

- Phone record reflects that on October 29, 2012, six phone calls were made to Gorish's phone between 8:08 a.m. and 8:15 a.m., and that during the same timeframe – both before and after the calls placed to Gorish – phone calls were also made from Plaintiff's home phone to Imperio's cell phone (*See* Gorish 56.1 Supp, ¶¶ 1-6.) According to Imperio's work schedule, he was scheduled to work from 8:00 a.m. to 4:00 p.m. on the same day. (*Id.*) Plaintiff also testified that in March 2014, she also called Gorish on three occasions. (*see* Pl 56.1 Reply to Gorish, ¶ 39). The only disputed fact concerning the March 2014 phone calls is whether Plaintiff and Gorish actually spoke (*id.* ¶¶ 34, 35).

Gorish further contends the evidence establishes Plaintiff was in-fact informed to "cease her conduct" (making calls) or at the very least had a good faith basis for believing Plaintiff was instructed to stop making the calls, as required to establish stalking in the fourth degree. Officer Lukach testified at his deposition that he believed that by July or August 2012, Moritz had been instructed not to call Gorish. (*See* Gorish 56.1 Supp ¶¶ 8, 10; Haworth Decl. Ex. S 42:22-43:7.)[11] Officer Lukach based his belief on conversations he had with Imperio. Imperio conveyed to

---

[11] Documentary evidence also reflects that Officer Lukach conveyed to Gorish that Moritz had been told not to call her before she made a sworn statement in support of the stalking charge against plaintiff. (*See* Luibrand Decl., Ex. L, at 5-6.)

Lukach that he told Plaintiff she had to stop making the calls to Gorish.[12] *Id.* Officer Lukach also believed Gorish continued to receive calls from Plaintiff after she had been warned to stop making such calls. *Id.* In further support, Gorish testified at her deposition that during a February 19, 2012 conversation with Plaintiff, she instructed Plaintiff to stop calling her (on her phone). Although Plaintiff denies ever talking to Gorish, the phone records indicate there was in-fact a three minute call took place on February 19, 2012, which originated from Plaintiff's telephone to Gorish's cell. Based on the forgoing, Gorish established at a minimum that she had a "reasonable basis" for her belief that Plaintiff was on notice to cease making further calls and such belief supports a finding of "probable cause necessary to defeat a . . . false arrest claim." *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008)); *Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011).

Finally, as to material harm resulting from Plaintiff's phone calls, the record reveals, and the parties do not dispute, that Plaintiff testified: (1) she received at least one of the phone calls while at the hospital with her ill son, after midnight (*see* Pl. 56.1 Reply to Gorish ¶ 28); and (2) in a contemporaneous email to Imperio, dated February 18, 2012, Gorish wrote that while she was at the "Peds ICU" where "Brian", who is presumably her son, had a "4-hour surgery," she "received 5 calls last night from 11 pm to 3 am" and asked that he "please tell her [Moritz] to knock it off," noting "I do not need this right now," (*id*. ¶ 49). Additionally, Gorish testified that because of the barrage of phone calls from Plaintiff, her husband began to "question[]" her as to "why [Plaintiff] would be calling and calling and calling,"[13] (*id*. ¶ 50). Plaintiff offers no evidence to refute

---

[12] Imperio testified at his deposition that he instructed Moritz to stop calling Gorish. (Ex. F)

[13] Plaintiff objects to this statement as she can neither confirm nor deny the content of conversations between Gorish and her husband. (*See* Pl. 56.1 Reply to Gorish, ¶ 50.) However, Plaintiff does not dispute that this testimony was offered, and does not cite to evidence to dispute this point.

Gorish's showing. Nor does Plaintiff point to any evidence to raise an issue of fact on Gorish's showing of a material harm.

It is undisputed that Plaintiff did in-fact make phone calls to Gorish over a course of time, that Officer Lukach and Gorish had a reasonable basis for believing Moritz was warned or instructed to cease making further calls to Gorish, and that Plaintiff continued to make calls to Gorish even after she had been told to cease. The evidence presented demonstrates that each element of the charge for stalking in the fourth degree was supported at the time of the arrest, and the evidentiary record demonstrates the existence of probable cause. Thus, both Gorish and the Town of Warwick Police had a reasonable basis for believing probable cause existed warranting the charge of stalking.

Plaintiff's attempts to raise an issue of fact as it relates to the stalking charge by asserting Gorish intentionally provided false statements to law enforcement with the intent of having Plaintiff arrested. (*See* Pl. Opp. at 9-11.) In support, Plaintiff asserts she and Gorish never spoke and she was never directed to stop making future calls. (*See* Pl. 56.1 Reply to Gorish, ¶¶ 34, 35). Plaintiff contends Gorish's deposition contains false allegations which were relied upon to arrest her. Furthermore, Moritz asserts the deposition contains additional false information because she never told Gorish to "stay away" from her "man" in February 2012 (*see* Pl. Opp. at 10 (citing to Haworth Decl., Ex. N)), and that she also advised Gorish to refrain from calling her. (*Id.*) Plaintiff appears to suggest that these false statements contributed to a finding of probable cause necessary to support her arrest. (*Id.*)[14] In response Gorish argues, even if the Court were to credit Moritz's contentions, she is still entitled to summary judgment because the evidence referenced by Plaintiff "were unnecessary to make the probable cause determination." (*See* Gorish Reply at 4.)

---

[14] As to the contention that these statements contributed to a finding of probable cause, the Court notes that these allegedly false statements do appear in the Supporting Deposition. (Haworth Decl., Ex. N.)

Giving false information to the police may be sufficient to prove that a defendant caused the arrest of and/or initiated a criminal proceeding against the plaintiff, where that information was relied upon to make the arrest and/or proceed with prosecution. *Armatas v. Maroulleti*, 08-CV-310 (SJF) (RER), 2010 WL 4340437, at *20 (E.D.N.Y. Oct. 19, 2010), *report and recommendation adopted in part*, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd in part*, 484 F. App'x 576 (2d Cir. 2012) (where there is a genuine issue as to whether a civilian intentionally gave false information to the police that resulted in the plaintiff's arrest or prosecution, claims for false arrest and/or malicious prosecution should not be dismissed on summary judgment); *see id.* (citing *Brown v. Sears Roebuck and Co*., 297 A.D.2d 205, 210 (1st Dep't 2002) (recognizing this tenet, but ultimately granting summary judgment because the "record . . . conclusively demonstrate[d] that the allegedly false evidence . . . did not contribute to the determination to arrest plaintiff," where the police did not rely on it); *Weiss v. Hotung*, 26 A.D.3d 855, 857 (4th Dep't 2006) (holding that the existence of probable cause as to some entities did not apply to the defendant who was accused of falsifying information to the police since a genuine issue of fact remained on that issue); *Brown v. Nassau County,* 306 A.D.2d 303, 303 (2d Dep't 2003) (affirming denial of summary judgment where there was a genuine issue of fact whether the civilian defendant provided false information to police resulting in plaintiff's arrest and prosecution)); *see also Anilao v. Spota*, 774 F. Supp. 2d 457, 511 (E.D.N.Y. 2011) (to succeed on false arrest claim, plaintiff must demonstrate defendant "made a false statement in his affidavit and that the allegedly false statement was '*necessary to the finding of probable cause*.'") (emphasis added); *Wright v. Musanti*, 14-CV-8976 (KBF), 2017 WL 253486, at *11 (S.D.N.Y. Jan. 20, 2017) (that police had probable cause to arrest plaintiff not proven where parties failed to offer testimony from arresting officer as to bases for arrest, and false evidence as well as defendant's decision to press charges

appeared to be sole proven bases for arrest). The question thus raised is whether Officer Lukach ultimately relied upon Gorish's statements exclusively for a finding of probable cause. Although probable cause may have existed irrespective of Gorish's statements, there is a narrow question of fact concern what information and or statements Officer Lukach and the Warwick Police Department relied upon in making their probable cause determination which prompted the arrest of Moritz. For this reason, Gorish's motion for summary judgement seeking to dismiss Plaintiff's false arrest claim must be denied.[15]

### ii. Malicious Prosecution

"To succeed on a malicious prosecution claim under Section 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 377 (E.D.N.Y. 2015). If Defendants are successful in demonstrating they are entitled to summary judgment on just one of these elements, the entire claim is defeated. *See Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 145 (1st Dep't 2002) ("Failure to establish any one of these elements defeats the entire claim.").

In the letter from the Orange County Assistant District Attorney withdrawing the underlying charges against Plaintiff, the district attorney indicated that the "People consent to the dismissal of the accusatory instrument pursuant to CPL Section 170.30 and 170.35" on the basis

---

[15] *Compare TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 268-69 (E.D.N.Y. 2010) ("A defendant instigates an arrest when he takes an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act …. Such an active role includes the provision of false information leading to an arrest") (internal quotation marks and citations omitted) *with Colon v. Wal-Mart Stores, Inc.*, 703 N.Y.S.2d 863, 867 (Sup. Ct. 1999) ("Merely providing information to the police, even when subsequently found to be in error, does not subject the informant to liability for false arrest unless he or she instigated the plaintiff's arrest or persuaded the police to arrest plaintiff").

that the complaint was based "in substantial party on hearsay allegations" that "[did] not appear to be curable by amendment." [16] (*See* Haworth Decl., Ex. M.) Defendant contends that such a dismissal of the complaint for "facial insufficiency" is inadequate to constitute a favorable termination. (*See* Gorish Mem. at 13-14.)

"New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 2017 WL 1208422, *14-15 (E.D.N.Y. 2017) (citing *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004)). However, "New York courts have held that the prosecution's voluntary dismissal of criminal charges without prejudice does not satisfy the favorable termination element of a malicious prosecution claim absent some 'indication that this withdrawal was intended as a formal abandonment of the proceeding.'" *Manbeck v. Micka*, 640 F. Supp. 2d 351, 372-73 (S.D.N.Y. 2009) (citing *Martin v. Columbia Greene Humane Soc'y, Inc.*, 793 N.Y.S.2d 586, 588 (3d Dep't 2005); *Stay v. Horvath*, 576 N.Y.S.2d 908, 911 (App. Div. 1991) (proceedings not terminated under circumstances implying plaintiff's innocence where District Attorney withdrew charges)); *see Ying Lee*, 2017 WL 1208422, *14-15 ("[A]ny final termination of a criminal proceeding in favor of the accused, *such that the proceeding cannot be brought again*, qualifies as a favorable termination for purposes of a malicious prosecution action") (emphasis added). Since it cannot be stated, as a matter of law, that the dismissal of Moritz's arrest was a "final termination," it does not qualify as a favorable disposition.[17]

---

[16] Generally, to be sufficient on its face, a misdemeanor information must contain factual allegations of an evidentiary character demonstrating reasonable cause to believe the defendant committed the offenses charged (CPL §§ 100.15[3]; 100.40[1][b]; 70.10). The facts must be supported by non-hearsay allegations which, if true, establish every element of the offenses (CPL § 100.40[1] [c]). An information which fails to satisfy these requirements is jurisdictionally defective (CPL § 170.30 and § 170.35; *People v. Alejandro*, 70 N.Y.2d 133 [1987]; *People v. Dumas*, 68 N.Y.2d 729 [1986]).

[17] A prosecution that does not result in an acquittal is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence. *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002)

Plaintiff's response to Defendant's contention is relegated to the last two sentences of her legal memorandum. (*See* Pl. Opp. to Gorish at 12.) Plaintiff posits that the Orange County Assistant District Attorney's withdrawal of "the charges when facing the motion [to dismiss] . . . is sufficient evidence of termination in favor of plaintiff." *Id*. Plaintiff, however, fails to cite to any legal support for her contention and makes no attempt to further elaborate on her contention. Thus, it is the Court's determination that Plaintiff's contention lacks merit. Since the evidence demonstrates the criminal complaint was dismissed not on the merits but for legal insufficiency, such termination cannot be deemed a "favorable termination." Accordingly, Gorish's motion for summary judgment seeking to dismiss Plaintiff's claim for malicious prosecution must be granted.

## III.    Defendant Biaso

Defendant Biaso moves for summary judgment seeking to dismiss all claims asserted against her. Biaso asserts there are no genuine issues of fact and that the law requires dismissal of Plaintiff's false arrest /imprisonment claims asserted under state and federal law. In opposition, Plaintiff contends, similar to her opposition to Moritz's motion for summary judgment, that Biaso made false allegations with the intent of causing Plaintiff's arrest. (*See* Pl. Opp. to Biaso Mot for Sum. Judgment ("Pl. Opp. to Biaso"), at 6.)

Plaintiff was arrested following the issuance of a warrant for Aggravated Harassment in the Second Degree, in violation of New York Penal Law 240.30. (*See* Biaso Decl., at Ex. R.) "A person is guilty of aggravated harassment in the second degree when, [in relevant part,] [w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication." N.Y. Penal Law § 240.30. A review of the documentary evidence demonstrates that there was probable cause to support Plaintiff's arrest.

In an effort to undermine Biaso's showing, Plaintiff presents a page of excerpts from Biaso's supporting deposition (*see* Biaso Decl., Ex. M), punctuated by various conclusory statements, without any citation to the record, that are presumably meant to serve as counter-statements, followed by the conclusion that "[m]ost of defendant Biaso's statements are false" and as such, "Plaintiff has clearly alleged sufficient allegations for New York state false arrest and malicious prosecution." (*See id.* at 7.) Without citation to the record, which includes over two thousand pages of documentary evidence provided by Biaso, the Court cannot deduce from Plaintiff's conclusory statements that Biaso knowingly provided false statements to or withheld relevant information from law enforcement to induce Plaintiff's arrest.

Nor does a review of Plaintiff's Memorandum alongside her 56.1 Reply Statement and the accompanying record support Plaintiff's contention. (*See* Pl. 56.1 Reply to Biaso.) With one exception, Moritz appears to argue, not that the representations in the Supporting Deposition are out rightly false, but that Biaso failed to disclose or withheld that she also corresponded with Moritz, perhaps instigating a response at times, to "incriminate" Plaintiff and portray her contact as "unsolicited," (*see* Pl. Opp. at 6.) As an initial matter, the statements in Biaso's Supporting Deposition challenged by Plaintiff as being false or presumably misleading are supported by record evidence and are uncontradicted. (*See* Pl 56.1 Reply to Biaso, ¶ 57 (indicating Plaintiff called Biaso at her place of employment in January 2014); ¶¶ 62-66 (indicating Plaintiff contacted Biaso on her cell phone, though the parties dispute whether the contact was invited); ¶ 100 (reflecting Biaso asked Plaintiff to "leave [her] alone"); Ex. O, at 112, 115, 117 (reflecting Biaso asked Plaintiff to "stop contacting [her]" on at least three occasions and Plaintiff sent subsequent messages replete with profanities directed toward Biaso); *see also* Pl. 56.1 Reply to Biaso, ¶¶ 68, 87, 72, 134-135 (Plaintiff admits to sending lewd messages to Biaso, that Biaso told Plaintiff she

would bring charges against her if she continued to contact her, and that she contacted Biaso from a blocked number)). A review of the proffered evidence demonstrates Plaintiff's arrest for harassment was premised upon probable cause. *See Ackerson v. City of White Plains*, 702 F.3d 15, 19-20 ("probable cause existed for an arrest . . . where the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."). Additionally, Plaintiff fails to cite a single case in support of her contention that an alleged aggressor can challenge a finding of probable cause under similar circumstances by demonstrating that the alleged victim participated in a set of interactions with, or even responded to the alleged aggressor but failed to disclose or provide such information to the police. Nor does Plaintiff proffer any case law in support of the proposition that summary judgment should be denied where a false-arrest-plaintiff asserts the defendant-declarant withheld information and the information withheld failed to affect the veracity of the statements upon which probable cause was based. Of note, Plaintiff's contention that Biaso "withheld" information from the police, based solely upon the notion that it *does not appear in the Supporting Deposition*, is speculative.

The only statement Plaintiff appears to categorize as "false" is Biaso's declaration that she saw Moritz drive by her home. (*See* Pl. Opp. at 7.) Even construing all inferences in Plaintiff's favor and crediting Plaintiff's contention that she had never driven past Biaso's home, Plaintiff points to no evidence upon which a reasonable trier of fact could conclude that Biaso "knowingly" made this statement to the police with the intent of having Plaintiff arrested.[18] Such a statement, even if true, does not diminish or raise an issue fact warranting the denial of summary judgment.

---

[18] The allegedly false statement made by Biaso is distinct from that of Gorish. Because, in Gorish's case, the parties dispute whether they actually spoke, if a reasonable fact-finder were to credit Plaintiff's testimony that the alleged conversation never occurred, it is plausible that she could reasonably conclude Gorish lied to the police with the intention of causing Plaintiff's arrest (because presumably, one would know with some certainty whether or not they had ever spoken with an individual). However, in Biaso's case, where Biaso said she saw Plaintiff's car drive past her home, without more, no reasonable fact-finder could conclude this statement was intentionally false as opposed to merely erroneous. In this regard, these claims are distinct.

The record, as previously referenced is replete with sufficient uncontradicted facts to support a charge of Aggravated Harassment in the Second Degree.

In fact, Plaintiff does not point to any evidence or make any argument that Baiso knew this statement to be false, as opposed to erroneous, or for that matter, that she lacked reasonable cause for this belief given the parties' interactions. *See TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 268-69 (E.D.N.Y. 2010) (defendant "instigates" arrest for purpose of false imprisonment claim when she provides "false information leading to an arrest" without "reasonable cause for [her] belief in the plaintiff's culpability."); *see also Rendely v. Town of Huntington*, 03-CV-03805 (ENV), 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) (As a matter of law, "if an officer decides, in the exercise of the officer's own discretion, to make an arrest, then a person providing information to the officer is not liable [for false imprisonment or arrest] even if the information provided by the informer is incorrect."). As such, Plaintiff fails to present a genuine issue of material fact as to whether Biaso intentionally provided false information or withheld information that could have affected a finding of probable cause. Since probable cause is a complete defense to claims of false imprisonment, malicious prosecution and abuse of process,[19] and Biaso has established the existence of probable cause for Plaintiff's arrest, Biaso is entitled to summary judgment on each of the claims.

---

[19] *See Sullivan v. City of New York*, 690 F. App'x 63, 67 (2d Cir. 2017) ("The summary judgment submissions revealed that the officers had probable cause to arrest Sullivan, which negated Sullivan's claims of false arrest, malicious prosecution, false imprisonment, and abuse of process."); *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015) (commenting that "numerous district courts within our Circuit [have found] that probable cause is a complete defense to an abuse-of-process claim under New York law, because it is an "excuse or justification," and noting the Second Circuit itself has "lent support to this interpretation" elsewhere, dismissing an abuse of process claim where plaintiff failed to show probable cause was lacking); *see id.* (citing *Granato v. City of N.Y.*, 98–CV–667 (ILG), 1999 WL 1129611, at *7 (E.D.N.Y. Oct. 18, 1999) ("[A] showing of probable cause at the time process issued suffices also to establish 'excuse or justification' for the purposes of a defense to abuse of process.") (citing *Berman v. Silver, Forrester & Schisano*, 156 A.D.2d 624, 549 N.Y.S.2d 125, 127 (2d Dep't 1989) (dismissing the plaintiff's abuse-of-process claim in part because "the defendants had probable cause to commence the prior action"))); *Harmer v. City of Lockport*, 98–CV–10 (JTE), 2000 WL 210201, at *4 (W.D.N.Y. Feb. 9, 2000) ("One element [of] an abuse-of-process claim is that such process was employed without excuse or justification, and a showing that defendants had

Plaintiff's conspiracy claim fails for similar reasons. Plaintiff asserts a conspiracy claim against Biaso on the basis that she conspired with Imperio to cause the false arrest, malicious abuse of process and malicious prosecution, bringing about Plaintiff's arrest without the existence of probable cause. (Pl. Opp. to Biaso at 13 (citing Am. Compl. at ¶ 18).) Given that the Court concludes that there was probable cause for Plaintiff's arrest on the harassment charge, the evidence does not support this claim as asserted in Plaintiff's complaint. Additionally, "where the substantive claims underlying a conspiracy claim have been properly dismissed, the conspiracy claim itself also fails." *Miller v. Bazan*, 13-CV-00993 (BKS), 2015 WL 339533, at *5 (N.D.N.Y. Jan. 26, 2015), appeal dismissed (June 23, 2015). Given the Court dismissal of those claims that form the basis for Plaintiff's conspiracy allegations, her conspiracy claim is also rightfully dismissed. For these reasons, Biaso's motion for summary judgment is granted.[20]

## CONCLUSION

For the foregoing reasons, the motions are resolved as follows.

Defendant/Counter-claimant Imperio's motion to amend is granted in part and denied in part:

That portion of the motion seeking to amend the pleadings to add additional counter-claims deemed timely, namely that in November 2015, Moritz falsely told Ms. Breitfeld that Imperio had sexual relations with an under-aged girl, and that in fall 2015, she told Ms. Satriano that Imperio raped a 15-year old  *(see supra*, at 6-7), is granted; and

That portion of the motion seeking to amend the pleadings to add additional counter-claims which were deemed as untimely, as falling outside the statute of limitations, (*supra*, at 7), is denied.

---

probable cause to effectuate plaintiff's arrest will suffice to establish a justification for the purpose of defeating such a claim." (citation omitted))).

[20] "Federal claims for false arrest and imprisonment brought via § 1983 . . . are 'substantially the same as a claim for false arrest under New York law.'" *TADCO Const. Corp.*, 700 F. Supp. 2d at 268.

Imperio's motion for summary judgment is granted in part and denied in part:

That portion seeking summary judgment as to Moritz's defamatory statement that he had improper sexual relations with an under-aged girl is granted; and

That portion seeking summary judgment as to Moritz's alleged defamatory statements that he raped an under-aged girl, that he was suspended from his job, and his libelous claim, is denied.

Defendant Gorish's motion for summary judgment is granted in part and denied in part:

That portion of Gorish's motion seeking to dismiss Plaintiff's Section 1983 conspiracy/joint action claims and malicious prosecution claim, is granted;

That portion of Gorish's motion seeking to dismiss Plaintiff's claim of false arrest, is denied.

Defendant Biaso's motion for summary judgment seeking to dismiss Plaintiff's state and federal claims sounding in false arrest, malicious prosecution, abuse of process, and conspiracy claims, is GRANTED. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 175 and 184. The Clerk of Court is also directed to terminate Biaso from this action. The parties are directed to appear for an in-person Pre-Trial Conference on November 16, 2017 at 10:00 a.m., at the Charles L. Brieant United States Courthouse, 300 Quarropas Street, White Plains, NY 10601, Courtroom 218.

Dated: October 19, 2017  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge